### BRANDENBURG *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

LUMPKIN, J. Under the pleadings and evidence, there was no error in granting a nonsuit in this case.

*Judgment affirmed. All the Justices concur, except Evans, P. J., disqualified, and Atkinson, J., dissenting.*

Argued February 17,—Decided August 14, 1909.

Action for damages. Before Judge Rawlings. Bulloch superior court. August 28, 1908.

*Evans & Evans, H. B. Strange, A. M. Deal,* and *Alfred Herrington,* for plaintiff. *Lawton & Cunningham, H. W. Johnson,* and *R. L. Gamble,* for defendant.

A widow brought suit against a railroad company to recover for the homicide of her husband. She alleged, in substance, as follows: On the 12th day of February, 1902, the defendant did, by the running of its locomotive, cars, or other machinery, in a careless, negligent, and improper manner, run over and kill her husband; the killing was done by the defendant's passenger-train. Defendant by its carelessness, negligence, and improper conduct and that of its officers, agents, and servants, in operating its locomotive, cars, and other machinery, did "wrongfully, wantonly run over and kill her husband." Special demurrers were filed, and it was held by this court that they were good. 122 *Ga.* 559 (50 S. E. 465). Plaintiff filed an amendment in which she allaged in substance as follows: Defendant was negligent; (*a*) in running its train at a high, unusual, and unnecessary rate of speed, which amounted to recklessness, over a part of the track which the public generally was accustomed to use as a path or

place to walk, and which was known to defendant and its servants in charge of the train, and where they had reason to expect a person or persons would be found, without keeping any lookout for them; (b) in failing to provide the locomotive with a proper headlight; (c) in failing to have a burning headlight on the engine; (d) in failing to equip the train with brakes, air-brakes, or other appliances necessary for the safe operation of such train, and without which its employees could not stop the train, even after having become aware of the presence of plaintiff's husband on the track a sufficient time to have stopped the cars had they been properly equipped; (e) in failing and refusing to stop the train, when its agents and servants had notice of the presence of her husband on the track and the imminent danger of killing him, a sufficient time beforehand to have prevented the killing of her husband, had they used the diligence the law requires; (f) the locomotive and cars were old and worn and improperly equipped, and not suited for the purpose for which they were used, rendering them incapable of being managed or controlled in a way to maintain the safety of the public and to have saved the life of the plaintiff's husband, even when his presence on the track and his imminent danger became known to the servants of the defendant on the train a sufficient length of time before he was struck to have saved his life, had the locomotive and cars been reasonably suited for the purpose for which they were to be used; (g) in that the defendant's agents failed and refused to blow or give any other signal at the crossing near which defendant's husband was killed, and in refusing to slack the speed of the train in time for him to have saved himself; (h) because the agents and servants of defendant ran said locomotive and cars in a reckless and wanton manner, without regard to the safety of the persons on board said train or those travelling along the public highway; (i) in that defendant's agents and servants in charge of the locomotive and cars, after the presence of plaintiff's husband became known, to them, failed and refused to slacken the speed of the train, blow any signal, or seek in any other way to avoid the killing of her husband, but on the other hand, even after his presence became known, ran said train of cars in a reckless and wanton manner without any regard to the life of plaintiff's husband, and struck and killed him in a wanton, reckless, and cruel manner; (j) in that the

defendant had an incompetent and unfit engineer in charge of the engine, being an old man with failing eyesight, and who could see but a short way; (*k*) in that the engineer and fireman and other agents and servants of the defendant failed and refused to keep a proper lookout, but although they were running on a straight track, with nothing to obstruct their view for a half mile or more, they did not look ahead of the engine, but ran the same in a reckless and careless manner over her husband, killing him; and he was entirely free from fault. After the decision in 129 *Ga.* 115 (58 S. E. 658), another amendment was made, alleging that her husband was at or within forty yards of a public-road crossing, and was lying upon the track, having been overcome by an attack of sudden illness, which rendered him unconscious and helpless; and that the train was not equipped with the appliances necessary to stop the train after the presence of her husband on the track was discovered and his imminent danger of being killed being known to the agents in charge of the train. On the trial there was evidence tending to show that the husband of the plaintiff was killed by the train of the defendant on the evening of February 12, 1902; that his body was found beside the track at a place where it ran through the woods, at a point estimated to be from 30 to 50 yards from a road crossing, though a witness for the plaintiff testified that he would not say positively that this distance was not as much as a hundred yards; that there were evidences on the track of the body having been dragged a distance estimated from 40 to 75 yards, making the distance from the point where he was apparently struck to the crossing from 100 to 115 yards; that the track was straight for some distance, and there was nothing to obstruct the view. As to the road crossing a witness for plaintiff testified that "in a strict sense, in a strict legal sense, I don't know that I could say it was a public road," but he had been travelling it for forty years. The ordinary testified that it seemed to be a private, and not a public road which crossed the railroad; "there is no record of that; . . it is not used or worked as a public road." There was no evidence that the deceased was lying down on the track because of sickness, or that the place was one frequented or used as a way for travel prior to the accident; but there was evidence that after the accident the railroad track was commonly used by persons walking between two neighboring named

towns, between which the place of the injury was located. There was some evidence that in the past the deceased had had two or more attacks of what a witness said they called apoplexy, rendering him temporarily helpless; but the last one was several months before his death. There was no evidence to show affirmatively whether the engineer or fireman did or did not see the deceased. There was no other evidence tending to show affirmatively the facts as to how plaintiff's husband was killed, or tending to show affirmatively that the defendant's servants were at the time in the exercise of ordinary and reasonable care and diligence.

